# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD ROMERO, JR., | Civil Action No. 13 – 691 |
| Plaintiff, | |
| v. | District Judge Arthur J. Schwab |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| LOUIS FOLINO, Facility Superintendent, JOHN/JANE DOE, Director of Bureau of Health Care Services, DR. BYUNGHAK JIN, Facility Medical Director, NEDRA GREGO, RN Supervisor, JOHN MCANANY, RN Supervisor, | ECF Nos. 11, 27 |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons stated herein, it is respectfully recommended that the DOC Defendants' Motion to Dismiss (ECF No. 27) be granted on the ground that Plaintiff has failed to allege sufficient personal involvement on the part of Defendant John/Jane Doe but be denied on all other grounds. The Complaint should therefore be dismissed in its entirety against Defendant John/Jane Doe.

It is further recommended that Dr. Jin's Motion to Dismiss (ECF No. 11) be granted on the ground that Plaintiff has failed to state an equal protection claim but be denied on all other grounds. Plaintiff's equal protection claim should therefore be dismissed with prejudice.

## II. REPORT

Plaintiff Richard Romero, Jr. ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections and is currently incarcerated at the State Correctional Institution at Greene ("SCI-Green"). He initiated this *pro se* prisoner civil rights action on May 17, 2013. In his Complaint (ECF No. 5) he alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Generally, he alleges that he was denied medical treatment for a fungal infection in his toenail.

Defendants include employees and health care providers for the Pennsylvania Department of Corrections ("DOC") at SCI-Greene. They include Louis Folino (Superintendent); Nedra Grego (Registered Nurse Supervisor), John McAnany (Registered Nurse Supervisor), Dr. Byunghak Jin (Facility Medical Director), and John/Jane Doe (Director of the Bureau of Health Care Services).

Dr. Jin filed a Motion to Dismiss on July 11, 2013, and the remaining Defendants ("DOC Defendants") filed a Motion to Dismiss on August 8, 2013. (ECF Nos. 11, 27.) Plaintiff responded to both Motions. (ECF Nos. 29, 31.) Dr. Jin filed a reply to Plaintiff's response. (ECF No. 36.) The Motions are now ripe for review.

### A. Background

The following allegations are included in Plaintiff's Complaint.

On November 12, 2011, Plaintiff submitted a sick call request seeking treatment for a toenail infection, which he believed to be Onychomycosis, a fungal infection of the nail. (ECF No. 5 at ¶ 10.) At that time he paid a $5.00 sick call fee. Id. On the sick call request form, he stated that his toenails had turned green and that one was beginning to deteriorate. Id. at ¶ 11.

2

Petitioner alleges that Ms. West accosted him in the Restricted Housing Unit ("RHU") on November 14, 2011. Id. at ¶ 12. In disregard to his medical confidentiality, she demanded to see the infection then walked away from his door stating that there was nothing she could do to treat his condition. Id. at ¶¶ 13-14.

On November 17, 2011, Petitioner filed Grievacne #390254, complaining about the medical department's refusal to provide him with treatment for his infection. Id. at ¶ 15; (ECF No. 5-1 at p.1.) His grievance was denied by Nurse Supervisor Nedra Grego who stated that Ms. West, PAC assessed his toenails and concluded that there was "minimal discoloration" and that he did not have a fungal infection. Id. at ¶ 16; Id. at p.2. His appeal was denied by Supervisor Folino on January 10, 2012. (ECF No. 5-1 at p.4.) In response to his final appeal, Chief Grievance Officer Varner stated that the record had been reviewed by the Bureau of Health Care Services ("BHCS") who determined that Plaintiff was being provided with reasonable and appropriate medical care. Id. at p.6. It was also noted that Plaintiff had been evaluated by Dr. Jin on January 12, 2012, at which time the pros and cons of treatment were discussed. Id. After discussing treatment options, Plaintiff elected not to start treatment at that time. Id.

On December 18, 2011, Plaintiff filed Grievance #394074. (ECF No. 5 at ¶ 20); (ECF No. 5-5 at p.1.) He complained that Ms. West falsely reported the condition of his infection, that she was incorrect in her medical assessment, that he was wrongfully and fraudulently denied his $5.00 sick call fee because treatment was not provided, and that he would file suit if he was not reimbursed his $5.00 fee or provided with treatment for his infection. Id. His grievance was denied by Nurse McAnany on January 5, 2012, who stated that Plaintiff's allegations were false and that there was a sick call system in place that he could utilize if he believed his condition worsened. Id. ¶ 22; Id. at p.2. Plaintiff's appeal was denied by Superintendent Folino on

January 27, 2012. (ECF No. 5-5 at p.4.) In response to his final appeal, wherein Plaintiff complained that the Superintendent was biased, Chief Grievance Officer Varner again noted the review by the BHCS and the evaluation by Dr. Jin on January 12, 2012.[1] (ECF No. 5 at ¶¶ 23-24); (ECF No. 5-5 at pp.5-6.)

Plaintiff disagrees with Varner's representation of his visit with Dr. Jin. Instead, he alleges that Dr. Jin "glanced" at his feet and diagnosed the condition as Onychomycosis. Id. at ¶¶ 24, 25. He told Plaintiff that the condition would stay with him for the rest of his life and informed him that he would not prescribe any treatment. Id. When Plaintiff questioned Dr. Jin's judgment, Dr. Jin allegedly became hostile and started to yell at Plaintiff. Id. at ¶ 26.

On January 12, 2012, Plaintiff filed Grievance #397448. Id. at ¶ 27; (ECF No. 5-7 at p.1.) In the grievance he complained that Dr. Jin would not prescribe him treatment to rid his fungal infection and that Dr. Jin became verbally abusive when Plaintiff inquired as to why he would not do so. Id. His grievance was denied by Tracy Shawley on grounds that the issue had already been addressed in his prior Grievances #394074 and #390254. Id. at ¶ 28; (ECF No. 5-7 at p.2.) Superintendent Folino agreed with Tracy Shawley and Plaintiff's grievance appeal was denied on January 27, 2012. Id. at ¶ 29; (ECF No. 5-7 at p.4.) His final appeal was dismissed by Varner on March 13, 2012. Id.; (ECF No. 5-7 at p.6.)

---

[1] Prior to his visit with Dr. Jin, Plaintiff had sent a Request to Staff Member to Nurse Grego complaining that he had to pay a $5.00 sick call fee when Ms. West did not provide him with any medical treatment. (ECF No. 5 at ¶ 17); (ECF No, 5-2 at p.1.) He sent other Request forms to Superintendent Folino, Nurse McAnany and Tracy Shawley wherein he complained that medical staff were falsifying his records in an attempt to cover up their malfeasance and deprive him of his money. (ECF No. 5 at ¶ 18); (ECF No. 5-3 at p.1); (ECF No. 5-4 at p.1). He requested that the infection on his toenail be photographed and documented. Id. Nurse Grego responded advising Plaintiff that photographs were not taken upon request and that if his conditioned worsened he would need to utilize the sick call system. (ECF No. 5 at ¶¶ 19, 20-21); (ECF No. 5-4 at p.1.)

Plaintiff claims that Defendants "covered up" their refusal to provide him with medical treatment. (ECF No. 5 at ¶ 31.)  He also alleges that Defendants refused to process his sick call slips dated January 2, 2013, and January 8, 2013.  Id. at ¶ at 32.  He complained about this in Grievance # 443374, that he filed on January 9, 2013.  Id. at ¶ 33; (ECF No. 5-8 at p.1.)  He acknowledged the grievances that he previously had filed and stated that he had requested and was denied treatment for his toenail infection on two prior occasions.  (ECF No. 5-8 at p.1.)  He said that he was denied treatment the first time because Ms. West claimed that he had lied about the condition of his toenail and he said that he was denied treatment the second time under the guise that he refused it.  Id.  He claimed that medical staff were falsifying his records and he requested disciplinary action against Dr. Jin, Nurse Grego, Nurse McAnany and the rest of the medical staff.  Id.  CHCA Irma Vihlidal stated that there was nothing in Plaintiff's medical chart to indicate that he required treatment and she denied Plaintiff's grievance on January 24, 2013. Id. at p.2; (ECF No. 5 at ¶ 34.)  On appeal, Plaintiff claimed that the alleged reasons why he was not provided with medical care were contradictory and false.  Id. at p.3; Id. ¶¶ 34, 35.  He posed the question of why Dr. Jin was talking about treatment options with him if there was nothing in his chart to indicate that he needed treatment.  Id.  Superintendent Folino dismissed Plaintiff's appeal stating that Plaintiff made discourteous comments to the medical staff.  Id. at p.4; Id. at ¶ 36.  Plaintiff's final appeal was dismissed because it was not presented in a courteous manner. Id. at pp.5-6; Id. at ¶ 37.

Plaintiff alleges violations under the Eighth and Fourteenth Amendments.  He claims that Defendants were deliberately indifferent to his serious medical needs and that he was denied equal protection of the laws.  Specifically, his alleges that:

1. Defendants deliberately denied him medical treatment.  Id. at ¶ 38.

2. Defendants refused to investigate his claims. Id. at ¶ 38.

3. Defendant John/Jane Doe refused to investigate contrary claims that were relied on to deny him medical treatment. Id. at ¶ 39.

4. Defendants Nurse Grego, Nurse McAnany, and Superintendent Folino refused to investigate the malfeasance of Ms. West when the matter was brought to their attention via grievances and appeals. Id. at ¶ 40.

5. Defendants failed to abide by the DOC Code of Ethics. Id. at ¶ 41.

6. Defendants refused to investigate each other. Id. at ¶ 42.

7. Defendants Folino and John/Jane Doe failed to take disciplinary action or rectify the situation. Id. at ¶ 43.

8. Defendants Dr. Jin, Nurse Grego, and Nurse McAnany refused to provide treatment after four sick calls. Id. at ¶ 44.

9. Defendants Dr. Jin, Nurse Grego, and Nurse McAnany falsified his medical records to deny him treatment. Id. at ¶ 44.

10. Dr. Jin denied him treatment after telling him that the disease would stay with him all of his life if not treated. Id. at ¶ 45.

11. Dr. Jin falsified his records and this constituted negligence. Id. at ¶ 46.

12. Dr. Jin's manner of diagnosing Plaintiff's infection was perfunctory. Id. at ¶ 47.

13. Dr. Jin failed to undertake necessary medical procedures to diagnose Plaintiff's infection and because of this he still does not know what kind of infection he has. Id. at ¶¶ 50, 51.

14. Defendants denied him medical treatment in order to curtail expenses. Id. at ¶ 52.

Because of Defendants' conduct, Plaintiff claims that he suffered the following injuries:

1. In order to impede the growth of the infection he must wash his feet numerous times a day whenever they start to sweat. The infection also emits a foul smell. Id. at ¶¶ 56, 58.

2. He must keep his feet bare in order to minimize the sweating even though the DOC keeps it cold as a psychological torture tactic. Id. at ¶ 57.

3. The infection has spread to other toenails that were not infected at the time he sought treatment and he is in fear that other toes may become infected as well. Id. at ¶¶ 62, 65.

4. The first toenail that was infected, as well as two others, has started to swell which causes him physical pain. Id. at ¶¶ 63, 64.

5. His toenails have thickened making them difficult to clip and he is only permitted to use toenail clippers for ten minutes once a month. Id. at ¶ 66. Because his toenails have thickened and overgrown, his toes bleed and are extremely sensitive. He may have even severed a capillary or nerve underneath his toe on two occasions. Id. at ¶ 67.

6. One of the Onychomycosis strains is spread by the continual immersion of the hands in water and because he has to wash his feet numerous times a day he is afraid that the infection will spread to his fingernails and the DOC has refused to provide him with gloves. Id. at ¶¶ 69, 70, 71.

7. He is at risk of being infected with Dermatophytids, which are skin lesions that sometimes form as a result of fungal infections. Id. at ¶ 72.

8. He lives in constant anxiety that the infection might spread and he has suffered depression over the ordeal. Id. at ¶¶ 68, 73.

9. Having to wash his feet and leave them bare is mentally exhausting and humiliating and causes him mental anguish, frustration, anxiety and physical pain. Id. at ¶ 59.

10. Because he must leave his feet bare he has had to abandon daily physical fitness exercise which has affected his health. He was told that his cholesterol level is above the normal limit and that he needs to exercise more. Id. at ¶¶ 60, 61.

**B. Standard of Review**

Defendants have filed Motions to Dismiss the Complaint for Plaintiff's failure to state a clam upon which relief can be granted. In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell

Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; *see also* Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556.

Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; *see also* Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

**C. Discussion**

1. Personal Involvement

The DOC Defendants argue that they are entitled to dismissal for lack of personal involvement in the alleged wrongdoing. They assert that their only involvement stems from reviewing and responding to Plaintiff's grievances. Specifically, they stated that Nurse Grego

9

reviewed and responded to Grievance #394074, Nurse McAnany reviewed and responded to Grievance #394074, Superintendent Folino responded to Plaintiff's grievance appeals, and the BHCS (whose Director, Defendant John/Jane Doe, has been identified as Richard Ellers) was only consulted by the Secretary's Office of Inmate Grievances and Appeals with regard to Plaintiff's final grievance appeals. They assert that this kind of involvement is insufficient to establish liability in a Section 1983 action. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). While they are correct that this is insufficient to establish personal involvement in a civil rights action, and the Court makes no determination as to ultimate liability, in this case, Plaintiff has alleged sufficient personal involvement of the DOC Defendants, with the exception of Richard Ellers, to withstand of motion to dismiss.

The DOC Defendants rely on Brooks v. Beard, 167 F. App'x 923 (3d Cir. 2006), but this case is distinguishable. Unlike in Brooks, where the plaintiffs had filed grievances simply to complain about their already-received treatment, here Plaintiff filed numerous grievances in an attempt to receive treatment in the first place. "Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that

violation because he is confronted with a situation he can remedy directly." Harnett v. Barr, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y 2008). Plaintiff's allegations that Defendants denied, without adequate investigation, grievances alleging ongoing constitutional violations is sufficient to defeat a motion to dismiss. *See*, *e.g.*, Carter v. Smith, No. 08-279, 2009 U.S. Dist. LEXIS 87179, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009); Zappulla v. Fischer, No. 11-6733, 2013 U.S. Dist. LEXIS 49728, 2013 WL 1387033, at *10 (S.D.N.Y. Apr. 5, 2013) ("[T]he Complaint further alleges that Defendant Lee, after being informed of that ongoing violation through the grievance process, failed to remedy that wrong. Those allegations . . . are adequate to state a claim against Lee.") (citations omitted); Whitehead v. Rozum, No. 11-102, 2012 U.S. Dist. LEXIS 136283, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted), *report and recommendation adopted by*, 2012 U.S. Dist. LEXIS 136270, 2012 WL 4370929 (W.D. Pa. Sept. 24, 2012); Williams v. Johnson, No. 10-1290, 2011 U.S. Dist. LEXIS 39815, 2011 WL 1396967, at *5 (E.D. Va. Apr. 11, 2011) ("In support of this argument, Williams states that Johnson was made aware of these violations through appeals to denial of grievances that Williams filed. To the extent that the [allegations] relate to ongoing constitutional violations that defendant Johnson was made aware of, Williams has plausibly stated a claim for which Johnson may be liable."); Binsack v. Lackawanna Cnty. Prison, No. 10-535, 2010 U.S. Dist. LEXIS 127112, 2010 WL 4973309, at *3 (M.D. Pa. Oct. 14, 2010) ("A prisoner's grievance or complaint regarding ongoing abuse may be sufficient to put a prison official on notice of such abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the

basis of a prisoner's claims.") (citing Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003), *report and recommendation adopted by*, 2010 U.S. Dist. LEXIS 127116, 2010 WL 4956329 (M.D. Pa Dec. 1, 2010). Of course, discovery will likely reveal the extent to which Defendants had actual knowledge of Plaintiff's alleged inadequate medical care. At this stage, however, the Court must assume that Plaintiff's grievances were sufficient to make Defendants aware of the alleged inadequate medical care.

However, Plaintiff has failed to allege sufficient personal involvement on behalf of John/Jane Doe, Director of the BHCS, who, as stated above, has been identified as Richard Ellers. Plaintiff attempts to hold Ellers liable simply based on his position as Director of the BHCS. This is a classic example of *respondeat superior*, and liability cannot be predicated solely on the operation of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). It is not even alleged that Ellers was personally consulted with regard to Plaintiff's grievance appeal. There are no factual allegations in the Complaint that state a claim against Ellers. Therefore, he should be dismissed from this action.

2. Deliberate Indifference to a Serious Medical Need

All Defendants move to dismiss Plaintiff's Complaint for failure to state a claim of deliberate indifference to a serious medical need.

In order to state such a claim, a plaintiff must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating

treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

First, Defendants argue that Plaintiff's medical condition, or Onychomycosis, is not a "serious" medical need and that courts have held similarly. They cite to Fear v. Diboll Correctional Center, 582 F.Supp.2d 841 (E.D. Tex. Oct. 14, 2008); Griffin v. Cook, No. 02-717-AS, 2005 WL 1113830 (D. Or. May 10, 2005); Villanueva-Monroy v. Hobart, No. 05-C-214-C, 2005, U.S. Dist. LEXIS 44315, 2005 WL 1364398 (W.D. Wis. June 7, 2005); White v. Boydston, No. 4:05cv2345SNL, 2007 U.S Dist. LEXIS 10284, 2007 WL 522312 (E.D. Mo. Feb. 14, 2007); and Winkleman v. Feinerman, No. 3:08-cv-00369, 2010 WL 5478666 (S.D. Ill. Dec. 6, 2010). Defendants are incorrect as these cases have not held outright that a nail fungus is not a serious medical need. Instead, these courts held that the facts as alleged by the plaintiffs in the respective cases did not show deliberate indifference to a serious medical need.

In this case, Plaintiff alleges that he has experienced degeneration of his toenail, which has worsened because the infection has not been treated. He also alleges that his toes have become inflamed and that his toenails have thickened and overgrown, which has caused bleeding and extreme sensitivity. He alleges that the infection has spread to other toenails, emits a foul smell and causes him physical pain. For purposes of the Eighth Amendment, Plaintiff has

pleaded the existence of a serious medical condition sufficient to state a plausible claim for relief.

Next, the DOC Defendants argue that, as a matter of law, Plaintiff has not stated a claim against them because they are non-physicians who relied on the medical opinions of treating physicians. Therefore, absent reason to believe that Plaintiff was being mistreated or not treated appropriately they cannot be found to be deliberately indifferent. *See* Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (prison officials who are not physicians cannot be considered to be deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by a prison doctor). *See also* Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). As this Court has observed,

> This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians and/or receiving treatment ordered by a physician, notwithstanding the prisoner's complaints about the physician's treatments and/or alleged misdiagnosis because a non-physician layperson has no experience whereby to judge the adequacy *vel non* of a physician's treatment.

Caldwell v. Fogel, 2009 U.S. Dist. LEXIS 86092, 2009 WL 3048558 at *7 (W.D. Pa. 2009).

Plaintiff alleges that, unlike a situation where a non-physician relies on a physician's diagnosis and treatment of a prisoner, he was not receiving treatment by a physician and the DOC Defendants knew this and failed to provide him with treatment even though it was necessary. As previously noted, it is unclear from this undeveloped record whether the DOC Defendants knew that treatment was not being provided, the extent to which treatment was necessary, and the extent to which they relied on the medical judgment of Dr. Jin and other medical staff at SCI-Greene. It is also unclear whether they had any ability or authority to

influence the course of medical treatment Plaintiff received. Therefore, their Motion should be denied.

Finally, Dr. Jin argues that Plaintiff was provided with medical care for his infection, as exemplified by his attachments to his Complaint, and that Plaintiff simply disagrees with Ms. West and Dr. Jin's professional medical assessment. In reply, Plaintiff does not dispute that he was seen by Dr. Jin on January 12, 2012. However, he disputes that he simply "disagrees" with the medical care that he was provided because, as he alleges, he was not actually provided with any medical care whatsoever, despite the fact that Dr. Jin acknowledged that his infection was Onychomycosis.

The record reveals that Plaintiff's grievances and appeals were denied because (1) Dr. Jin discussed to pros and cons of treatment with Plaintiff on January 12, 2012, and that Plaintiff elected not to pursue treatment, and (2) because there was nothing in Plaintiff's medical chart to indicate that treatment was necessary. Plaintiff maintains that these two reasons are contradictory.

Plaintiff alleges that Dr. Jin told him that Onychomycosis would stay with him for the rest of his life if it was not treated. Plaintiff questions why Dr. Jin would say such a thing if he believed that treatment was not necessary. Therefore, Plaintiff alleges that Dr. Jin believed that treatment was necessary but intentionally denied it. Again, Plaintiff alleges that he did not refuse treatment and questions why he would do so when he has spent such a considerable amount of time seeking it.

While the undersigned does not believe that the above rationales are necessarily contradictory, because Dr. Jin may have believed treatment to be unnecessary while at the same time offering to provide it, the Complaint contains sufficient factual allegations to support a

claim of deliberate indifference to medical needs. Once the record is developed, Defendants' arguments may require the granting of a motion for summary judgment; however, at this stage of the proceedings, the complaint passes the legal tests for specificity. The undersigned therefore recommends that the Motions be denied.

   3. Equal Protection

Plaintiff claims that he was denied his right to equal protection but he provides no factual allegations to support his claim. To state an equal protection claim under the Fourteenth Amendment, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Plaintiff does not allege that he was singled out for disparate treatment for any particular reason. He does not even oppose Dr. Jin's Motion to Dismiss on this ground. Plaintiff has not stated an equal protection claim and therefore it should be dismissed.

## III. CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the DOC Defendants' Motion to Dismiss (ECF No. 27) be granted on the ground that Plaintiff has failed to allege sufficient personal involvement on the part of Defendant John/Jane Doe but be denied on all other grounds. The Complaint should therefore be dismissed in its entirety against Defendant John/Jane Doe.

It is further recommended that Dr. Jin's Motion to Dismiss (ECF No. 11) be granted on the ground that Plaintiff has failed to state an equal protection claim but be denied on all other grounds. Plaintiff's equal protection claim should therefore be dismissed with prejudice.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 4, 2014.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Richard Romero, Jr.
    HZ0734
    Waynesburg, PA 15370
    *Via First Class Mail*

    Counsel of Record
    *Via ECF Electronic Mail*